UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MALCOLM GRIFFIN,

Plaintiff,

v.

NASSAU COUNTY, et al.,

Defendants.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-5348-SJB-ARL

**BULSARA, United States District Judge:**

Plaintiff Malcolm Griffin was twice indicted and arrested for attempted murder based on the testimony of two eyewitnesses who were later found to have committed perjury. He brings this action against Nassau County and two of the detectives involved in the criminal investigation and prosecution, James Schmettan and Willliam Bourguignon, (collectively, "Defendants"), alleging malicious prosecution, false arrest, and various state tort claims. Defendants have moved for summary judgment. (Defs.' Mot. for Summ. J. dated July 25, 2025 ("Defs.' Mot."), Dkt. No. 40-1). Because Griffin is unable to overcome the presumption that the indictments against him were based on probable cause, his false arrest and malicious prosecution claims are dismissed. And because he has abandoned the remainder of his claims, the motion is granted in its entirety.

STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c)

(requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir.

2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached

thereto—are undisputed unless otherwise noted.[1] Where a relevant genuine dispute exists, the Court highlights both parties' versions of the facts. But the Court does not consider portions of the parties' Rule 56.1 statements that are legal conclusions, irrelevant, or merely objections to inferences drawn from the opposing party's statements.

This case arises from Griffin's arrest and prosecution for an attempted murder on February 17, 2016 in Roosevelt, New York. (Defs.' Rule 56.1 Statement dated July 25, 2025 ("Defs.' 56.1 Stmt."), Dkt. No. 40-2 ¶¶ 1, 20; Pl.'s Resp. to Defs.' 56.1 Stmt. ("Pl.'s 56.1 Resp."), Dkt. No. 40-24 ¶¶ 1, 20). That night, taxi driver Jose Gonzalez was responding to a call at a house when two young men wearing ski masks entered the back of his cab and one struck him on the head. (*Id.* ¶ 1; Defs.' 56.1 Stmt. ¶ 1; Pl.'s Counterstatement of Additional Material Facts ("Pl.'s 56.1 Stmt."), Dkt. No. 40-24 ¶ 45; Defs.' Resp. to Pl.'s 56.1 Stmt. dated Jan. 16, 2026 ("Defs.' 56.1 Resp."), Dkt. No. 40-42 ¶ 45).[2] After Gonzalez exited the cab, the same individual knocked him to the ground and demanded money. (Pl.'s 56.1 Resp. ¶ 2; Defs.' 56.1 Stmt. ¶ 2). Before Gonzalez

---

[1] Griffin disputes several facts in Defendants' 56.1 Statement without any citation to admissible evidence and based solely on legal argument or counsel's assertions. (*See, e.g.*, Pl.'s Resp. to Defs.' 56.1 Stmt., Dkt. No. 40-24 ¶¶ 6, 9, 13, 28, 35, 39). Facts disputed in such a manner are deemed admitted. *See* Loc. Civ. R. 56.1(c); *Aptive Env't, LLC v. Village of East Rockaway*, No. 21-0677, 2022 WL 211091, at *2 (2d Cir. Jan. 25, 2022) ("So long as the moving party's Rule 56.1(a) statement includes citations to admissible evidence, [i]f the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (quotation omitted)).

[2] Defendants moved to strike Griffin's Counterstatement of Material Facts as an unnecessary and lengthy recitation of the facts in violation of the Local Civil Rules. (Defs.' Mot. to Strike dated Jan. 16, 2026, Dkt. No. 41). Given that Griffin's claims are otherwise dismissed, the motion is denied as moot.

could comply, the individual shot him in the left eye and the two ran off. (*Id.* ¶¶ 2–3; Pl.'s 56.1 Resp. ¶¶ 2–3).

In March 2016, Detective Schmettan, working in the Nassau County Police Department's ("NCPD") Gang Investigation Squad, was assigned to investigate the shooting. (Pl.'s 56.1 Stmt. ¶ 47; Defs.' 56.1 Resp. ¶ 47; Defs. 56.1 Stmt. ¶ 5). At that time, there was no suspect. (*Id.* ¶ 6; Pl.'s 56.1 Resp. ¶ 6). Schmettan began his investigation by going to the scene, pulling phone records, speaking with the victim, and "canvass[ing] the street." (Pl.'s 56.1 Stmt. ¶¶ 51–54).

In the course of the investigation, Schmettan was called into a meeting with Assistant District Attorney ("ADA") Jhounelle Cunningham, a confidential informant, Andre Dennis, and Dennis's attorney. (Defs.' 56.1 Stmt. ¶ 7; Pl.'s 56.1 Resp. ¶ 7). During the meeting, Dennis provided information related to the 2016 shooting and identified Griffin as the shooter. (*Id.* ¶ 8; Defs.' 56.1 Stmt. ¶ 8). He also testified to certain details about the crime, including the color of the taxi, the direction of travel of the taxi, a timeline of the crime, and where the shooting took place. (*Id.* ¶ 9; Pl.'s 56.1 Resp. ¶ 9). Dennis told the ADA and Schmettan that the mother of his child, Tyneria Hardy, was also present that night and witnessed the incident. (*Id.* ¶ 10; Defs.' 56.1 Stmt. ¶ 10). Hardy would later provide a sworn statement identifying Griffin as the shooter. (*Id.* ¶ 11; Pl.'s 56.1 Resp. ¶ 11).

The District Attorney's Office vetted Dennis and found him to be credible before he was given a cooperation agreement. (*Id.* ¶ 12; Defs.' 56.1 Stmt. ¶ 12). Specifically, Cunningham had multiple meetings with Dennis and his attorney in which she

assessed his credibility, found him to be a "very direct individual" and did not recall ever finding him to be untruthful. (*Id.* ¶¶ 14–15; Pl.'s 56.1 Resp. ¶¶ 14–15). ADA Victoria Mauri, also assigned to the case, similarly testified to assessing Dennis as being truthful, explaining that at one point he had contemplated not cooperating anymore and taking a 15-year sentence due to fear of Griffin discovering his cooperation, which she took to "indicate[] [his] credibility." (*Id.* ¶ 39; Defs.' 56.1 Stmt. ¶ 39; *see also* Dep. of Victoria Mauri ("Mauri Dep."), attached to Defs.' Mot. as Ex. 15, Dkt. No. 40-19 at 88:5-14). Schmettan also met with Dennis several times over the course of the investigation and testified that he never received any indication that Dennis was lying. (Defs.' 56.1 Stmt. ¶ 37; Pl.'s 56.1 Resp. ¶ 37). Schmettan cautioned Dennis on multiple occasions to testify truthfully. (*Id.* ¶ 38; Defs.' 56.1 Stmt. ¶ 38; *see also* Dep. of James Schmettan ("Schmettan Dep."), attached to Defs.' Mot. as Ex. 13, Dkt. No. 40-17 at 94:8-11 ("I continuously told Andre Dennis, anytime I encountered him, that . . . you have to tell the truth; I am not going to trial with you lying.")).

As for Hardy, Cunningham does not recall being suspicious of her testimony because Hardy "didn't want to talk to [her] for a long time." (Defs.' 56.1 Stmt. ¶ 16; Pl.'s 56.1 Resp. ¶ 16). The NCPD and District Attorney's Office also conducted photo arrays, where Dennis and Hardy each identified Griffin as the shooter. (*Id.* ¶ 17; Defs.' 56.1 Stmt. ¶ 17).

In the fall of 2018, Cunningham made a presentation to a grand jury. (*Id.* ¶ 18; Pl.'s 56.1 Resp. ¶ 18). Schmettan testified before the grand jury on October 4, 2018, as to his interview with the victim and ballistics evidence recovered from the scene of the

crime. (*Id.* ¶ 19; Defs.' 56.1 Stmt. ¶ 19). The grand jury indicted Griffin on December 10, 2018, and a warrant was issued for his arrest charging him with attempted murder in the second degree, among other charges. (*Id.* ¶ 20; Pl.'s 56.1 Resp. ¶ 20).

On or about January 17, 2019, Griffin appeared at a probation office in Clayton County, Georgia for a probation check-in in another case and was arrested pursuant to the New York warrant and waived extradition. (*Id.* ¶¶ 21–23; Defs.' 56.1 Stmt. ¶¶ 21–23). He was placed into custody in the Clayton County Jail for about nine days. (*Id.* ¶ 24; Pl.'s 56.1 Resp. ¶ 24). Detectives Schmettan, Bourguignon, and Schmidt arrived at the Clayton County Jail on January 30, 2019 to transport Griffin to New York. (*Id.* ¶ 25; Defs.' 56.1 Stmt. ¶ 25). Schmettan testified that upon his arrival, Griffin asked him what was going on and he answered that he was arresting him for the shooting on Jefferson Ave, to which Griffin replied, "I knew those guys ratted on me." (*Id.* ¶ 26; Pl.'s 56.1 Resp. ¶ 26; *see also* Dep. of William Bourguignon, attached to Defs.' Mot. as Ex. 14, Dkt. No. 40-18 at 119:5-7 (testifying to the same)). Schmettan testified that he wrote down the statement before leaving the jail. (Pl.'s 56.1 Stmt. ¶ 102). Griffin disputes this. (*Id.* ¶¶ 98–100). Schmettan completed a crime report on Griffin's extradition on January 30, 2019, making no note of Griffin's contested statement. (*Id.* ¶¶ 116–17, 120). Griffin was incarcerated at the Nassau County Jail on or about January 31, 2019. (Defs.' 56.1 Stmt. ¶ 27; Pl.'s 56.1 Resp. ¶ 27).

On May 29, 2019, the grand jury indictment was "reluctantly" dismissed with leave to represent based on an "irregularity with the presentment," that Dennis testified while in custody of Detectives Schmettan and Bourguignon, who themselves were

testifying witnesses. (Defs.' 56.1 Stmt. ¶ 28; *see also* Indictment Dismissal Order, attached to Defs.' Mot. as Ex. 5, Dkt. No. 40-8 at 1–2). The Detectives had been standing in the back of the grand jury room during Dennis's testimony. (Pl.'s 56.1 Stmt. ¶¶ 96–97; Defs.' 56.1 Resp. ¶¶ 96–97; Indictment Dismissal Order at 3). Griffin was released from custody on June 3, 2019, after 124 days of incarceration. (Defs.' 56.1 Stmt. ¶ 29; Pl.'s 56.1 Resp. ¶ 29).

A second grand jury presentment was made in 2019 with Schmettan again testifying on July 8, 2019 about his interview with the victim and the ballistics evidence recovered from the scene of the crime. (*Id.* ¶ 31; Defs.' 56.1 Stmt. ¶ 31). The grand jury again indicted Griffin and on July 10, 2019, a second arrest warrant was issued. (*Id.* ¶ 32; Pl.'s 56.1 Resp. ¶ 32). Griffin was arrested on December 10, 2019, at his mother's house in Atlanta, Georgia and extradited back to Nassau County. (*Id.* ¶ 33; Defs.' 56.1 Stmt. ¶ 33). Schmettan continued his investigation by listening to phone calls Griffin made from jail, including at least one call during which Schmettan heard Griffin confide in another caller that he had done "some clown ass gang shit that is going to ruin the rest of his life," or something to that effect. (*Id.* ¶¶ 35–36; Pl.'s 56.1 Resp. ¶¶ 35–36).

In early 2022, ADA Nicole Aloise met with Dennis to prepare him for trial testimony and thought, for the first time, that he may not be testifying truthfully because "certain details . . . were not lining up and that had nothing to do with the passage of time," notifying defense counsel and the court that she wanted more time to investigate before proceeding to trial. (*Id.* ¶¶ 40–41; Defs.' 56.1 Stmt. ¶¶ 40–41). Aloise then spoke with Dennis and Hardy who admitted to her that they had lied before the

grand jury, which she disclosed to Griffin's defense counsel. (Pl.'s 56.1 Stmt. ¶ 136; Defs.' 56.1 Resp. ¶ 136). Following further investigation, Aloise recommended the case be dismissed because, although she believed that Griffin was there the night of the shooting, she "did not have prosecutable evidence to go forward" and she "had witnesses [she] believed lied in the grand jury." (Defs.' 56.1 Stmt. ¶ 42; Pl.'s 56.1 Resp. ¶ 42). Griffin was released on February 2, 2022, after 785 days in custody. (*Id.* ¶ 34; Defs.' 56.1 Stmt. ¶ 34).

Griffin commenced this action on July 13, 2023. (Compl., Dkt. No. 1). He raises several causes of action: (1) violation of his Fourth and Fourteenth Amendment rights to be free of unreasonable seizure and deprivation of liberty under 42 U.S.C. § 1983; (2) false arrest and false imprisonment under New York law; (3) malicious prosecution under the Fourth Amendment and New York law; (4) negligent hiring, retention, training and supervision; (5) supervisory liability for deprivation of rights under § 1983; (6) failure to intervene under § 1983; (7) *Monell* liability; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. (*Id.* ¶¶ 80–120). The parties completed briefing on Defendants' motion on January 16, 2026. (Defs.' Mot.; Pl.'s Opp'n to Defs.' Mot. dated Dec. 1, 2025 ("Pl.'s Opp'n"), Dkt. No. 40-23; Defs.' Reply in Supp. of Defs.' Mot. dated Jan. 16, 2026 ("Defs.' Reply"), Dkt. No. 40-41).[3]

[3] The case was transferred to the undersigned from the Honorable Ramon E. Reyes, Jr. on January 3, 2025.

DISCUSSION

**I. Malicious Prosecution**

To prevail on a malicious prosecution claim under New York and federal law, a plaintiff must demonstrate: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, (4) actual malice, and (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Carruthers v. Colton*, 153 F.4th 169, 181 (2d Cir. 2025) (quotation omitted). Probable cause is a complete defense to a malicious prosecution claim. *Frost v. N.Y.C. Police Dep't,* 980 F.3d 231, 242–43 (2d Cir. 2020); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) ("[I]f there was probable cause for the prosecution, then no malicious prosecution claim can stand.").

Where a plaintiff has been indicted by a grand jury, the indictment creates "a presumption of probable cause." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). "That presumption may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (quotation omitted). Thus, to succeed on a malicious prosecution claim after indictment, a plaintiff must "establish what occurred in the grand jury" and "further establish that those circumstances warrant a finding of misconduct." *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004). A plaintiff cannot rebut the presumption with

"mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino*, 331 F.3d at 73 (quotation omitted).

Here, probable cause is presumed because a grand jury twice indicted Griffin. (Defs.' 56.1 Stmt. ¶¶ 20, 32; Pl.'s 56.1 Resp. ¶¶ 20, 32). Even viewing the evidence in the light most favorable to Griffin, no reasonable jury could find that the indictments were procured by bad faith. Griffin's arguments to the contrary are unpersuasive.

*First*, Griffin argues that the presumption is rebutted given that the indictment was secured through Schmettan and Bourguignon's misconduct. (Pl.'s Opp'n at 12). Griffin alleges that the detectives perjured themselves, misrepresented or falsified evidence, and suborned the perjury of Dennis and Hardy. (*Id.* at 13). But these are conclusory allegations made without any evidentiary support.[4] (*Id.*). For example, he argues that the detectives' presence during the first grand jury presentation and Schmettan's multiple warnings to Dennis to tell the truth were indicative of his suborning perjury. (*Id.* at 14). But telling a witness to tell the truth is consistent with truth-telling, not attempting to get the witness to lie. And while the detectives'

[4] Schmettan requested a comparison of prints recovered from the scene to Griffin's prints which excluded Griffin as a match. (Pl.'s 56.1 Stmt. ¶¶ 71–74). Griffin insists that Schmettan lied about the comparison results during his deposition, (*id.* ¶ 70), an assertion that Defendants vehemently dispute, (Defs.' 56.1 Resp. ¶ 70). This debate is irrelevant to the claims and theories presented in this litigation. At no point does Griffin (in his complaint, his 56.1 statement, or his briefing) ever contend that Defendants failed to provide these fingerprint results to Griffin's counsel, there was a *Brady* violation associated with the fingerprint results, or that these results somehow were part of a fraud upon the grand jury. At best, Griffin uses the allegedly false deposition testimony as evidence that Schmettan was out to get Griffin—which at best goes to whether the malice element of the claim has been set forth. But, as noted, the Court need not reach this issue in light of Griffin's failure to demonstrate the other elements of malicious prosecution.

presence led to the dismissal of the first indictment, that fact does nothing to explain how the second indictment was procured through fraud or malfeasance. And in any event, the assertions that their presence was "deliberate" and suggests that Schmettan "fed facts to Dennis who likely then shared them with Hardy before they each testified," (*id.* at 14), amounts to Griffin's speculation as to what occurred, which cannot overcome the presumption of the indictment. *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010) ("[W]here a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than mere conjecture and surmise that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith, which is insufficient to rebut the presumption of probable cause." (quotation omitted) (collecting cases)).

The parties dispute whether Griffin stated "I knew those guys ratted on me" when the detectives arrived to effectuate his first arrest. (*See* Defs.' 56.1 Stmt. ¶ 26; Pl.'s 56.1 Stmt. ¶¶ 98–99). But there is no evidence that this statement was ever presented to the grand jury—even if it was false. (*See* Oct. 4, 2018 Grand Jury Transcript, attached to Defs.' Mot. as Ex. 2, Dkt. No. 40-5 (Schmettan testifying to his interview with the victim and the ballistic evidence recovered at the scene); July 8, 2019 Grand Jury Transcript, attached to Defs.' Mot. as Ex. 6, Dkt. No. 40-9 (same); *see also* Indictment Dismissal Order at 1–2 (noting that Schmettan and Bourguignon also testified to the identification procedures performed as part of their investigation)). Griffin admits as much. (*See* Pl.'s 56.1 Resp. ¶¶ 19, 31 (admitting that Schmettan testified as to his interview of the victim

and the ballistics evidence)). Nor is there any indication that the documents memorializing Griffin's alleged statement were presented to the grand jury.[5] Griffin's conclusory allegations that the detectives engaged in perjury before the grand jury cannot overcome the presumption of probable cause. *See Ferguson v. City of New York*, No. 23-1315, 2025 WL 1793890, at *3 (2d Cir. June 30, 2025) (affirming dismissal of malicious prosecution claim where plaintiff presented no genuine dispute of material fact "that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment" (quotation omitted)); *Simmons v. N.Y.C. Police Dep't*, 97 F. App'x 341, 343 (2d Cir. 2004) (affirming dismissal of malicious prosecution claim where plaintiff alleged that police fabricated line-up identifications, issued a false complaint against him, and admitted to him that they would do so to implicate him, but presented no evidence "establishing that the indictment was procured through the use of this allegedly tainted evidence"); *see also Furet v. City of New York*, No. 22-CV-3172, 2025 WL 2549240, at *5 (S.D.N.Y. Sep. 4, 2025) ("Plaintiff has failed to offer any particular evidence of misconduct, fraud, or bad faith in the grand

[5] Griffin makes much of a purportedly exculpatory crime report in which Schmettan recorded "no statement" being made by Griffin during his first arrest. (Pl.'s Opp'n at 14, 16; Pl.'s 56.1 Stmt. ¶¶ 121–22). But it was exculpatory only in so far as it related to the inculpatory statement made by Griffin, which was not presented to the grand jury. And, therefore, the crime report's existence had no bearing on the grand jury process.

jury. His bare assertions that [the officer defendant] must have lied to the grand jury are insufficient to meet his burden.").[6]

That Dennis and Hardy's testimonies were deemed perjurious after-the-fact does not undermine the probable cause created by the indictments. *See Jenkins v. City of New York*, No. 98-CV-7170, 1999 WL 782509, at *9, *11 (S.D.N.Y. 1999) (finding later-discovered perjury by a civilian witness in a grand jury failed to rebut the presumption of probable cause where there was no evidence of police involvement in perjury), *aff'd,* 216 F.3d 1072 (2d Cir. 2000); *Cabble v. City of New York*, No. 04-CV-9413, 2009 WL 890098, at *3 (S.D.N.Y. Mar. 30, 2009) (granting defendant's motion for judgment on the pleadings where no facts were alleged to support claim that prosecutors were complicit in civilian witness's perjury before the grand jury).[7]

---

[6] Griffin's reliance on *Boyd v. City of New York* is misplaced. (Pl.'s Opp'n at 13–14 (citing 336 F.3d 72 (2d Cir. 2003))). In *Boyd*, conflicting evidence as to whether plaintiff made an incriminating statement before or after his arrest—dispositive of whether the police lied as to when they arrested the plaintiff to secure an indictment—was enough to establish bad faith and survive summary judgment. *Id.* at 77. But here, Griffin argues that there are material issues of fact over whether he uttered an inculpatory statement that, unlike the admission in *Boyd*, was not relevant to the indictment.

[7] In *Batista-Reyes v. Paul*, a witness's recantations were found to be evidence of bad faith sufficient to overcome the probable cause presumption from an indictment. *See* -- F.4th --, No. 23-0461, 2026 WL 2386336, at *13 (2d Cir. Aug. 17, 2026). The prosecution's principal witness in *Batista-Reyes* later recanted her testimony, in doing so she also said that the prosecutors "threatened her," "gave her a script," and even made her rehearse her responses. *Id.* at *14. Such evidence was sufficient for a jury to find that "the indictment was procured by misconduct in the form of [her] apparent perjury." *Id.* Here, however, no evidence of such misconduct on the part of Defendants is presented. Griffin's allegations that Dennis and Hardy were coerced or forced to perjure themselves are fully speculative.

*Second*, Griffin argues that it was "objectively unreasonable" for Defendants to rely on either Dennis or Hardy. (Pl.'s Opp'n at 15). In doing so, he points to inconsistencies between the victim's and witnesses' testimonies, such as the number of assailants and whether the victim was shot in the car or outside on the street. (*Id.*). But such inconsistencies do not lead to the conclusion that Defendants knew the testimony was perjurious or otherwise acted in bad faith—they amount to critiques of the prosecutor's strategy, or at most, the weakness of the case against Griffin. *See Thorpe v. Duve*, No. 20-3679, 2022 WL 332804, at *3 (2d Cir. Feb. 4, 2022) (finding inconsistencies in informant's story insufficient to show that "Defendants used his testimony knowing he was perjuring himself").

Griffin is unable to overcome the presumption of probable cause created by the indictments and his claim for malicious prosecution must be dismissed.[8] *See McGrier v. City of New York*, 849 F. App'x 268, 271 (2d Cir. 2021) (affirming grant of summary judgment where plaintiff was indicted by a grand jury and failed to offer any evidence, aside from his own speculation, that the indictment was procured by bad faith conduct); *Jessamy v. Jakasal*, No. 21-0214, 2022 WL 1669512, at *2 (2d Cir. May 26, 2022) (same).

## II. False Arrest

"Under New York law, the elements of a false arrest and false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was

---

[8] Because Griffin fails to establish the third element of a malicious prosecution claim, the Court does not address the other elements.

conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quotation omitted); *see also Carruthers*, 153 F.4th at 179 ("A Section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law[.]" (quotation omitted)).[9] "Under both federal and New York state law, probable cause is a complete defense to a false arrest claim." *Id.* (quotation omitted). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Jin v. City of New York*, 169 F.4th 373, 380 (2d Cir. 2026) (quotation omitted).

An arrest made pursuant to a judicial arrest warrant "is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Walczyk v. Rio*, 496 F.3d 139, 155–56 (2d Cir. 2007); *Mahoney v. State of New York*, 147 A.D.3d 1289,

---

[9] Griffin argues that Defendants failed to move for summary judgment on his first cause of action, violation of his Fourth Amendment right to be free from unreasonable search and seizure. (Pl.'s Opp'n at 22 n.3). But Defendants move for summary judgment on all of Griffin's claims, (Defs.' Mot. at 1), addressing his false arrest claim under federal law, (*id.* at 13–17). *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law." (quotation omitted)). Additionally, Griffin's attempt to now reframe this claim as one of unreasonably prolonged detention—based on allegedly exculpatory evidence acquired in discovery—is impermissible since the Complaint contained no such allegation, and instead alleged an illegal arrest and imprisonment made "without probable cause." (Compl. ¶ 81); *see Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.").

1291 (3d Dep't 2017) ("[W]here, as here, an arrest warrant has been issued by a court of competent jurisdiction, there is 'a presumption that the arrest was [made] on probable cause.'" (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 458 (1975)). To rebut the presumption, the plaintiff must show that a warrant was obtained by fraud or was "facially invalid." *Johnson v. Dobry*, 660 F. App'x 69, 71 (2d Cir. 2016). Probable cause may also be presumed when an arrest warrant issues pursuant to an indictment. *See Walker v. Sankhi*, 494 F. App'x 140, 142–43 (2d Cir. 2012).

Griffin argues that there was insufficient information for the Defendants to arrest him, because their suspicion was not based on trustworthy information. (Pl.'s Opp'n at 19). But there is no dispute that Griffin was arrested both times pursuant to an arrest warrant issued upon the grand jury's return of an indictment. (Defs.' 56.1 Stmt. ¶¶ 20, 32; Pl.'s 56.1 Resp. ¶¶ 20, 32). As noted, Griffin has failed to make a showing that the indictments were procured by bad faith, because his arrest warrants were obtained based on valid indictments, his false arrest claim is dismissed. *See, e.g.*, *Adams v. Co-Op City Dep't of Public Safety*, No. 21-CV-2675, 2025 WL 4722465, at *13 (S.D.N.Y. Sep. 17, 2025) (granting summary judgment on false arrest claim where plaintiff could not overcome the presumption of probable cause flowing from the fact that he was arrested

pursuant to a valid warrant, which issued pursuant to an indictment), *report and recommendation adopted*, 2026 WL 446218, at *1 (Feb. 17, 2026).[10]

**III. State Law Claims**

As to Griffin's remaining state law claims—negligent hiring, retention, training, and supervision; intentional infliction of emotional distress; and negligent infliction of emotional distress—Defendants contend that they are time-barred[11] and otherwise cannot survive summary judgment. (Defs.' Mot. at 21–22). Griffin raises no argument in opposition.

"It is at the time of the motion for summary judgment that a party can decide which claim to pursue and which not." *Ruradan Corp. v. City of New York*, No. 22-CV-3074, 2024 WL 1555230, at *5 (S.D.N.Y. Apr. 10, 2024) (citing *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014)). "Where a partial response to a motion [for summary judgment] is made—*i.e.*, referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial

---

[10] Because the Court finds that Griffin's claims for false arrest and malicious prosecution are dismissed, the County cannot have any liability under *Monell*. *See Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022) ("[A] *Monell* claim cannot succeed without an independent constitutional violation."). The claim for failure to intervene is similarly dismissed. *See Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim.").

[11] Under New York law, a tort action against a municipality or its employees acting in the scope of their employment must be commenced within one year and ninety days "after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50-i(1). Defendants argue that each state claim accrued on the date of arrest. (Defs.' Mot. at 21–22). And whether the first or second arrest is considered—January 17, 2019 or December 10, 2019, respectively—Griffin did not commence this lawsuit until July 13, 2023. (*See* Compl.).

opposition that relevant claims or defenses that are not defended have been abandoned." *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd*, 716 F. App'x 5, 14 (2d Cir. 2017) (quoting *Jackson*, 766 F.3d at 197–98); *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (deeming claims abandoned where plaintiff "fail[ed] to argue that they should survive [defendant's] motion for summary judgment" while addressing other claims).

Here, given Griffin's failure to address these claims, the Court deems them abandoned and grants Defendants summary judgment. *See Ziming Shen v. City of New York*, 725 F. App'x 7, 17 (2d Cir. 2018) (affirming the district court's dismissal of two claims "on the basis that [plaintiff's] opposition to summary judgment did not address those claims"); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on [a] claim, [that] claim is deemed abandoned and summary judgment could be granted on that basis alone.") (collecting cases); *LPD New York, LLC v. Adidas Am., Inc.*, No. 15-CV-6360, 2022 WL 4450999, at *27 (E.D.N.Y. Sep. 24, 2022) (granting defendants summary judgment as to counterclaims because plaintiff did not dispute or respond to them) (collecting cases). The claims are dismissed with prejudice.

CONCLUSION

For all of these reasons, the Defendants' motion for summary judgment is granted and the Complaint is dismissed.[12] The Clerk of Court is directed to close this case.

SO ORDERED.

*<u>/s/ Sanket J. Bulsara</u>*
SANKET J. BULSARA
United States District Judge

Date: August 27, 2026
Central Islip, New York

[12] Griffin's claim for supervisory liability, brought against "John Does," (Compl. ¶ 95), is also dismissed as the parties were never identified and substituted into the case.